IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      No. CR 08-2842 BB

LUIS DIAZ-PEREZ,

        Defendant.

**COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER GRANTING SUPPRESSION**

**THIS MATTER** came before the Court on Defendant's *Motion to Suppress Evidence* [Doc. 19], and having reviewed the briefs of counsel and having held an evidentiary hearing on March 9, 2009, the following are the Court's Findings of Fact and Conclusions of Law:

**Findings of Fact**

1.   Interstate 40 ("I-40") is a major corridor of travel through the United States used heavily by the traveling public.

2.   Route 66 Casino and Resort Service Stop (hereinafter "the Service Stop") is located off of I-40 near Albuquerque, New Mexico.

3. The Service Stop is located within the interior of the State of New Mexico, and is well over 200 miles from any border between New Mexico and the Republic of Mexico.

4. There are thousands of regular motorists, many of whom are Hispanic, that stop on a frequent basis at the Service Stop to obtain gas, food, gifts and frequent the casino.  Since it is many miles outside the Albuquerque city limits, using this facility allows patrons easy-on/easy-off access to the Interstate.

5. On October 15, 2008, Border Patrol Agent Brian Knoll, arrived at the Service Stop in uniform in his marked unit intending to investigate possible illegal aliens by conducting consensual encounters.

6. Agent Knoll saw a minivan with Arizona plates next to one of the gas pumps. He knew that a minivan is a vehicle which can hold a large number of passengers and, as such, is used by smugglers of illegal aliens who often come through Arizona.

7. Agent Knoll decided to try to engage the occupants of the minivan in a consensual encounter; in other words, he decided to approach the occupants of the minivan and attempt to illicit personal information while they were fueling the minivan and purchasing supplies.

8. Drug Enforcement Administration Agent Kevin Small and Albuquerque Police Officer Darren Irwin were, unbeknownst to Agent Knoll, already at the Service

**Stop also attempting to engage in consensual encounters with travelers. Neither of these officers was in uniform nor had any indicia of office visible.**

9. **All three law enforcement officers were at the Service Stop because they had previously arrested people at this location following consensual encounters.**

10. **On the opposite side of the Service Stop parking lot from Agent Knoll, Agent Small observed the minivan enter the parking lot and pull up to the gas pump.**

11. **Agent Small observed that the occupants of the minivan, later identified as Luis Diaz-Perez and Junior Mendez, did not use a credit card directly at the pump. Instead, Diaz-Perez walked toward the entrance of the Service Stop; Agent Small assumed to pay for the gasoline.**

12. **Agent Small said to Officer Irwin, who had accompanied him, that they should try to engage the occupants of the minivan in a consensual encounter after Diaz-Perez came out of the Service Stop.**

13. **As Diaz-Perez approached the entrance to the Service Stop, Agent Knoll exited his vehicle and began walking toward the Hispanic man, later identified as Junior Mendez, who was beside the minivan.**

14. **As Agent Knoll approached the minivan, Mendez began running toward the back of the Service Stop.**

15. **Luis Diaz-Perez exited the Service Stop and began running after Mendez.**

16. **Agent Knoll estimated that he was at least 20 yards away from Diaz-Perez when the latter walked out of the convenience store and began running.**

17. **Agent Knoll never spoke to either Mendez or Diaz-Perez in any fashion in English or Spanish, and in fact walked back to his patrol unit when they began to run.**

18. **Agent Knoll never had any contact of any type or nature with Diaz-Perez, and cannot say Diaz-Perez even saw him.**

19. **Neither Agent Small nor Officer Irwin witnessed any criminal activity on behalf of Diaz-Perez which would have led to him being arrested, but Agent Small yelled to Officer Irwin, "they are running from Brian [Knoll]."**

20. **Agent Small and Officer Irwin, with guns drawn, chased down Mendez and Diaz-Perez and caught them in the back of the Service Stop.**

21. **The chase ended when the plain clothed officers yelled in Spanish, "La Policia" and "Alto" (which in English means "police" and "stop").**

22. **Neither Special Agent Small nor Officer Irwin can identify which one of the two individuals that they apprehended.**

23. **Diaz-Perez was apprehended by either Agent Small or Officer Irwin at gunpoint, taken to the ground, a knee placed in his back, and was handcuffed.**

24. After he was stopped at gunpoint by either Agent Small or Officer Irwin, taken to the ground and handcuffed, Diaz-Perez was not free to leave and a full custodial arrest had been made.

25. Very shortly thereafter, Agent Knoll arrived in his vehicle and found that Defendant had been arrested, so he commenced questioning Defendant as to his citizenship status.

26. Pursuant to this questioning, Diaz-Perez who had been forcibly detained and handcuffed admitted that he was a citizen of Mexico and did not have written authorization to be in the United States.

27. Following the arrests, the minivan belonging to Mendez was searched by Agents Knoll and Small and no contraband was found.

## Conclusions of Law

1. The Court rejects the Government's assertion that merely because Agents Knoll and Small had previously made arrests at the Route 66 Casino and Resort Service Stop it was a "high crime area."  *See, e.g., United States v. Montero-Camargo*, 208 F.3d 1122, 1142-43 (9th Cir. 2000) (Kozinski concurring) (setting up a checkpoint and making arrests on the Interstate does not turn that portion of highway into a "high crime area").

2. **There is no evidence Diaz-Perez saw Agent Knoll or was running from him. Agent Knoll did not have any type of contact with Diaz-Perez prior and cannot say Diaz-Perez was even aware of his presence.**

3. **Agent Knoll had no articulable belief or reasonable suspicion that anyone associated with the minivan bearing Arizona license plates had committed any crime.**

4. **There is nothing inherently suspicious about a minivan bearing Arizona license plates being on the Interstate.** *United States v. Tapia*, **912 F.2d 1367, 1371 (11th Cir. 1990).**

5. **Agent Knoll did not seek or request any assistance from any other law enforcement officer at any time including when he saw two Hispanic individuals run around the side of the Service Stop.**

6. **Agent Small saw Agent Knoll in the parking lot and then saw the two men running toward the side of the Service Stop.  Neither Small nor Irwin had any reason to believe Diaz-Perez had even seen Knoll.**

7. **Other than he was running after Mendez, neither Agent Small nor Officer Irwin had any reasonable suspicion to stop Diaz-Perez.** *Wong Sun v. United States*, **371 U.S. 471, 482 (1963);** *Alberty v. United States*, **162 U.S. 499, 511 (1896) (innocent men may run to avoid involvement);** *Illinois v. Wardlow*, **528 U.S. 119, 127-30 (2000) (Stevens concurring and dissenting) (running may have several**

**explanations); Stanley A. Goldman, *To Flee or Not to Flee–That is the Question: Flight as a Furtive Gesture*, 37 Id. L. Rev. 557 (2001).**

8. **Neither Agent Small nor Officer Irwin had any reasonable suspicion sufficient to push Diaz-Perez down at gun point and cuff him. *United States v. Melendez-Garcia*, 28 F.3d 1046 (10th Cir. 1994) (in the absence of reason to believe suspects were armed or violent, *Terry* stop did not justify police using guns and handcuffs).**

9. **The pulling of a weapon on Diaz-Perez and holding him on the ground while being handcuffed was not an investigative stop.**

10. **The encounter between Diaz-Perez and either Agent Small or Officer Irwin was not a consensual encounter, and was a seizure and arrest. *United States v. Franklin*, 323 F.3d 1298 (11th Cir. 2003); *Yarborough v. Montgomery*, 554 F. Supp. 2d 611 (D.S.C. 2008).**

11. **The arrest of Diaz-Perez was not based on probable cause. *See Wong Sun, supra; United States v. Margeson*, 259 F. Supp. 256, 265 (E.D. Pa. 1966) ("flight, in and of itself, is not sufficient to constitute probable cause").**

12. **All statements and evidence obtained following the illegal arrest of Luis Diaz-Perez must be suppressed.**

## ORDER

**For the above stated Findings of Fact and Conclusions of Law, Defendant Luis Diaz-Perez'** *Motion to Suppress Evidence* **is GRANTED, and all statements and evidence are SUPPRESSED.**

**SO ORDERED this 1st day of April, 2009.**

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**United States District Judge**